FILED BY HH

Deputy Clerk

Sep 19, 2018

STEVEN M. LARIMORE
CLERK U.S. DISTRICT CT.
S.D. OF FLA. MIAMI

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

September 19, 2018

Steven M. Larimore
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number:  16-10876-EE
Case Style: Dontrell Stephens v. Evett Simmons, et al
District Court Docket No: 9:14-cv-80425-BSS

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to:  Lois Tunstall
Phone #:  (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

**UNITED STATES COURT OF APPEALS**
**For the Eleventh Circuit**
_____

No. 16-10876
_____

District Court Docket No.
9:14-cv-80425-BSS

EVETT L. SIMMONS,
in her capacity as Guardian of the
Property of Dontrell Stephens,

                                    Interested Party - Appellant
                                    Cross Appellee,

DONTRELL STEPHENS,

                                    Plaintiff - Appellant
                                    Cross Appellee,

versus

RIC BRADSHAW,
Sheriff of Palm Beach County, Florida,
ADAMS LIN,
Deputy Sheriff, individually,

                                    Defendants - Appellees
                                    Cross Appellants,

PALM BEACH COUNTY SHERIFF'S OFFICE,

                                    Defendant.
_____

Appeals from the United States District Court for the
Southern District of Florida
_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: January 10, 2018
For the Court: DAVID J. SMITH, Clerk of Court
By: Djuanna Clark

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-10876

_____

D.C. Docket No. 9:14-cv-80425-BSS

EVETT L. SIMMONS,
in her capacity as Guardian of the
Property of Dontrell Stephens,

                                        Interested Party - Appellant
                                        Cross Appellee,

DONTRELL STEPHENS,

                                        Plaintiff - Appellant
                                        Cross Appellee,

versus

RIC BRADSHAW,
Sheriff of Palm Beach County, Florida,
ADAMS LIN,
Deputy Sheriff, individually,

                                        Defendants - Appellees
                                        Cross Appellants,

PALM BEACH COUNTY SHERIFF'S OFFICE,

                                        Defendant.

———————————————

Appeals from the United States District Court
for the Southern District of Florida

———————————————

(January 10, 2018)

Before TJOFLAT and WILSON, Circuit Judges, and ROBRENO,[*] District Judge.

ROBRENO, District Judge:

Dontrell Stephens was shot four times by Deputy Sheriff Adams Lin during an encounter in West Palm Beach, Florida, on September 13, 2013.  As a result, Stephens now suffers from permanent paralysis.

In an action brought against Deputy Lin as an individual and Sheriff Ric Bradshaw in his official capacity as the sheriff of Palm Beach County, the district court granted summary judgment in favor of Sheriff Bradshaw on the claim against him for *Monell* liability.  Following a trial that lasted from January 25, 2016, until February 4, 2016, a jury awarded Stephens damages totaling $23,148,100.

The parties have cross appealed the district court's rulings on various motions decided both before and after the trial.  We affirm the district court's grant of summary judgment in favor of Sheriff Bradshaw on the *Monell* claim brought against him, but we remand for a new trial upon finding that an erroneous jury instruction deprived Deputy Lin of the opportunity to have his claimed defense of qualified immunity considered by the district court.

---

[*] Honorable Eduardo C. Robreno, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

I.

Most of the facts giving rise to this case are hotly disputed.  The parties agree that, on September 13, 2013, shortly after 8:00 a.m., Deputy Lin, who was on police duty monitoring traffic during school bus pickups, observed Stephens, who was then twenty years old, riding his bike on the wrong side of a road in Palm Beach County, Florida.  Deputy Lin then decided to stop Stephens, for reasons that the parties dispute.  Stephens claims that, prior to this stop, he was holding a cellphone to his ear while riding his bicycle.  Deputy Lin claims that he never saw the cellphone, and believed instead that Stephens' hands were empty.

Upon hearing the sirens of Deputy Lin's patrol car, Stephens dismounted from his bicycle.  Deputy Lin then instructed Stephens to walk toward him while showing his hands.  According to Deputy Lin, Stephens turned away from Deputy Lin as he began walking toward him.  As soon as Stephens turned away, Deputy Lin shot him four times.  Stephens was rendered a paraplegic by his injuries.

Stephens' lawsuit against Deputy Lin and Sheriff Bradshaw arrived at the United States District Court for the Southern District of Florida in the spring of 2014 after removal from state court.[1]  Stephens' six-count amended complaint in federal court alleged various violations of 42 U.S.C. § 1983 and state law,

---

[1]     Stephens' counsel, Evett Simmons, Esquire, served as a co-plaintiff in this case in her capacity as guardian of the property of Dontrell Stephens.  For the sake of simplicity, we refer throughout this opinion only to "Stephens," rather than to "Plaintiffs" collectively.

including an excessive force claim against Deputy Lin and a *Monell* liability claim against Sheriff Bradshaw.

After discovery was complete, Stephens and each defendant filed separate motions for summary judgment. The district court heard oral argument on all three summary judgment motions, and at that hearing, Stephens agreed to dismiss two of his state law claims against Sheriff Bradshaw. The district court then granted summary judgment in favor of Deputy Lin as to the constitutionality of the stop, and additionally granted summary judgment in favor of Sheriff Bradshaw as to the entire *Monell* claim against him. The summary judgment motions were denied in all other respects. *See Simmons v. Bradshaw*, No. 14-80425, 2014 WL 11456548, at *1 (S.D. Fla. Dec. 31, 2014).

Following the district court's denial of summary judgment on grounds of qualified immunity, Deputy Lin filed a timely notice of interlocutory appeal. A panel of this Court affirmed, agreeing with the district court that a reasonable jury could find that Deputy Lin violated Stephens' clearly established constitutional rights by employing excessive force, and further that the allegedly violated right was clearly established by governing case law. *See Stephens v. Lin*, 612 F. App'x 581, 582 (11th Cir. 2015) (per curiam).

On remand, Stephens sought reconsideration of the interlocutory *Monell* ruling. In support of his motion for reconsideration, Stephens attached as evidence

4

deposition testimony and expert reports from several other excessive force lawsuits brought against the Palm Beach Sheriff's Office ("PBSO") and its officers. Although the district court held a lengthy hearing on the motion for reconsideration, it ultimately denied the motion without written explanation.

On January 25, 2016, the matter proceeded to trial on the two counts that remained: a § 1983 excessive force claim against Deputy Lin, and a state law battery claim against Sheriff Bradshaw.[2]  On February 3, 2016, the jury returned its verdict, finding that "Adams Lin's intentional use of force against Dontrell Stephens was excessive or unreasonable."  The jury also found that Stephens suffered severe and permanent injuries as a result of Deputy Lin's use of force, and it awarded damages totaling $23,148,100.

Pursuant to the jury's verdict, the Court entered final judgment for Stephens and against Deputy Lin and Sheriff Bradshaw, jointly and severally, in the amount of $22,431,892.05.  Each of the parties timely filed a notice of appeal.  Stephens challenges the pre-trial grant of summary judgment dismissing Stephens' multifaceted *Monell* claim against Sheriff Bradshaw.  Deputy Lin challenges the post-trial denial of his motion for a new trial based on two particular jury

---

[2]      The parties stipulated, and the district court ordered, that if the jury found that Deputy Lin had committed a battery, then Sheriff Bradshaw would be held vicariously liable.  We refer throughout this opinion to "Deputy Lin" and "Sheriff Bradshaw" individually, as each pertinent issue and defense pertains to these defendants separately.

instructions he contends were erroneous, including one pertaining to his claimed defense of qualified immunity.[3]

II.

Rule 59(a) of the Federal Rules of Civil Procedure allows a court to grant a new trial "on all or some of the issues."  Fed. R. Civ. P. 59(a).  A motion for a new trial may be brought on "various grounds, including[] erroneous jury instructions." *Tierney v. Black Bros. Co.*, 852 F. Supp. 994, 1003 (M.D. Fla. 1994) (citing *Stuckey v. N. Propane Gas Co.*, 874 F.2d 1563, 1571 (11th Cir. 1989)).

"Motions for new trial on the basis of erroneous and prejudicial jury instructions are within the district court's discretion and are reviewed for abuse of discretion."  *Gowski v. Peake*, 682 F.3d 1299, 1310 (11th Cir. 2012) (citing *Pate v. Seaboard R.R., Inc.*, 819 F.2d 1074, 1077 (11th Cir. 1987)).  To determine whether the court below abused its discretion, "we examine the challenged instructions as part of the entire charge, in light of the allegations of the complaint, the evidence presented, and the arguments of counsel, to determine whether the jury was misled and whether the jury understood the issues."  *Pate*, 819 F.2d at 1077.

---

[3]      Deputy Lin also appeals the district court's denial of his request for a jury instruction that an officer's actions must be viewed from the perspective of a reasonable officer on the scene, and not with 20/20 hindsight vision.  The instruction given at trial stated that "[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene."  We find no merit in Deputy Lin's argument that he was prejudiced because this instruction did not include the phrase "rather than with the 20/20 vision of hindsight."

In conducting this examination, we review jury instructions *de novo* "to determine whether they misstate the law or mislead the jury." *Conroy v. Abraham Chevrolet-Tampa, Inc.*, 375 F.3d 1228, 1233 (11th Cir. 2004) (quoting *Palmer v. Bd. of Regents of the Univ. Sys. of Ga.*, 208 F.3d 969, 973 (11th Cir. 2000)). If the instructions do not accurately reflect the law and "do not correctly instruct the jury so that we are 'left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations,'" then "we will reverse and order a new trial." *Broaddus v. Fla. Power Corp.*, 145 F.3d 1283, 1288 (11th Cir. 1998) (quoting *Carter v. DecisionOne Corp.*, 122 F.3d 997, 1005 (11th Cir. 1997)).

We review a grant of summary judgment *de novo*, applying the same standard as the court below. *See Southern Waste Sys., LLC v. City of Delray Beach*, 420 F.3d 1288, 1290 (11th Cir. 2005) (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001)).

III.

A government official faced with a civil rights claim brought pursuant to 42 U.S.C. § 1983 is entitled to raise the affirmative defense of qualified immunity. Qualified immunity generally shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Recognition of qualified immunity

"reflect[s] an attempt to balance competing values: not only the importance of a damages remedy to protect the rights of citizens, but also 'the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority.'" *Id.* at 807 (citation omitted) (quoting *Butz v. Economou*, 438 U.S. 478, 506 (1978)).

Qualified immunity is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)  (per curiam) ("Immunity ordinarily should be decided by the court long before trial."); *see also Johnson v. Breeden*, 280 F.3d 1308, 1317 (11th Cir. 2002) ("Because of the purpose served by the doctrine of qualified immunity, a valid defense based upon it must be recognized as soon as possible, preferably at the motion to dismiss or summary judgment stage of the litigation.").  It "follows from the recognition that qualified immunity is in part an entitlement not to be forced to litigate the consequences of official conduct" that this defense is "conceptually distinct from the merits of the plaintiff's claim that his rights have been violated." *Mitchell*, 472 U.S. at 527-28.

Entitlement to qualified immunity is for the court to decide as a matter of law.  Specifically, a court considering a defendant's claim of qualified immunity must address the following question of law:

> [W]hether the legal norms allegedly violated by the defendant were
> clearly established at the time of the challenged actions or, in cases
> where the district court has denied summary judgment for the
> defendant on the ground that even under the defendant's version of
> the facts the defendant's conduct violated clearly established law,
> whether the law clearly proscribed the actions the defendant claims he
> took.

*Mitchell*, 472 U.S. at 528; *see also Harlow*, 457 U.S. at 818 ("[T]he judge

appropriately may determine, not only the currently applicable law, but whether

that law was clearly established at the time an action occurred."); *Cottrell v.*

*Caldwell*, 85 F.3d 1480, 1488 (11th Cir. 1996) ("Qualified immunity is a legal

issue to be decided by the court . . . ."); *Stone v. Peacock*, 968 F.2d 1163, 1166

(11th Cir. 1992) ("The law is now clear . . . that the defense of qualified immunity

should be decided by the court, and should not be submitted for decision by the

jury."); *Hudgins v. City of Ashburn*, 890 F.2d 396, 403 (11th Cir. 1989) ("[T]he

availability of qualified immunity necessarily is a question of law.").

Though entitlement to qualified immunity presents a question of law,

resolution of this question can sometimes turn on issues of fact.  We have

previously explained why and under what circumstances a defendant's entitlement

to qualified immunity may remain unresolved even into the trial phase of litigation:

> Where it is not evident from the allegations of the complaint alone
> that the defendants are entitled to qualified immunity, the case will
> proceed to the summary judgment stage, the most typical juncture at
> which defendants entitled to qualified immunity are released from the
> threat of liability and the burden of further litigation. Even at the
> summary judgment stage, not all defendants entitled to the protection

of the qualified immunity defense will get it. The ones who should be given that protection at the summary judgment stage are those who establish that there is no genuine issue of material fact preventing them from being entitled to qualified immunity. And that will include defendants in a case where there is some dispute about the facts, but even viewing the evidence most favorably to the plaintiff the law applicable to that set of facts was not already clearly enough settled to make the defendants' conduct clearly unlawful. *But if the evidence at the summary judgment stage, viewed in the light most favorable to the plaintiff, shows there are facts that are inconsistent with qualified immunity being granted, the case and the qualified immunity issue along with it will proceed to trial*.

*Johnson*, 280 F.3d at 1317 (emphasis added) (citation omitted); *see also Vaughan v. Cox*, 343 F.3d 1323, 1333 (11th Cir. 2003) ("But [the defendant] is not foreclosed from asserting a qualified immunity defense at trial.  If the jury were to accept [the defendant's] version of the facts, the qualified immunity analysis would be changed.").

If a government official moves for summary judgment asserting entitlement to qualified immunity, then the relevant facts are construed in the light most favorable to the non-movant—*i.e.*, the plaintiff—and the court should decide the issue based on those facts.  *See Mitchell*, 472 U.S. at 526 ("Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts.").

If the official's motion does not succeed, however, then his qualified immunity defense remains intact and proceeds to trial. The facts as viewed for summary judgment purposes are no longer binding, and the jury proceeds to find the relevant facts bearing on qualified immunity. *See id.* at 527 ("At trial, the plaintiff may not succeed in proving his version of the facts, and the defendant may thus escape liability."); *Johnson*, 280 F.3d at 1318 ("When the case goes to trial, the jury itself decides the issues of historical fact that are determinative of the qualified immunity defense . . . ."); *Cottrell*, 85 F.3d at 1487 ("[A] defendant who does not win summary judgment on qualified immunity grounds may yet prevail on those grounds at or after trial on a motion for a judgment as a matter of law." (alteration in original) (quoting *Kelly v. Curtis*, 21 F.3d 1544, 1546 (11th Cir. 1994))).

At trial, the court uses the jury's factual findings to render its ultimate legal determination as to whether it would be evident to a reasonable officer, in light of clearly established law, that his conduct was unlawful in the situation he confronted:

> Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause or exigent circumstances, for example, and in those situations courts will not hold that they have violated the Constitution. Yet, even if a court were to hold that the officer violated the [Constitution] . . ., [Supreme Court precedent] still operates to grant officers immunity for reasonable mistakes as to the legality of their actions.

*Saucier v. Katz*, 533 U.S. 194, 206 (2001).  In other words, the question of what

circumstances existed at the time of the encounter is a question of fact for the

jury—but the question of whether the officer's perceptions and attendant actions

were objectively reasonable under those circumstances is a question of law for the

court.  *See id.*; *see also Harris v. Coweta Cty.*, 21 F.3d 388, 390 (11th Cir. 1994)

(questions of "whether the law allegedly violated was clearly established at the

time of the complained-about conduct" and "whether the official's conduct was

objectively reasonable in light of the information known to the official at the time"

are "objective, albeit fact-specific, inquiries which we undertake as questions of

law" (citation omitted) (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987),

and *Mitchell*, 472 U.S. at 526-28 & n.9)).

        "Where the defendant's pretrial motions are denied because there are

genuine issues of fact that are determinative of the qualified immunity issue,

special jury interrogatories may be used to resolve those factual issues." *Cottrell*,

85 F.3d at 1487.  As we have said before:

> Because a public official who is put to trial is entitled to have the true
> facts underlying his qualified immunity defense decided, a timely
> request for jury interrogatories directed toward such factual issues
> should be granted. *Denial of such a request would be error, because
> it would deprive the defendant who is forced to trial of his right to
> have the factual issues underlying his defense decided by the jury*.
>
> We do not mean to imply, of course, that district courts should submit
> the issue of whether a defendant is entitled to qualified immunity to
> the jury.  Qualified immunity is a legal issue to be decided by the

court, and the jury interrogatories should not even mention the term. Instead, *the jury interrogatories should be restricted to the who-what-when-where-why type of historical fact issues*.

When a district court has denied the qualified immunity defense prior to trial based upon its determination that the defense turns upon a genuine issue of material fact, the court should revisit that factual issue when, and if, the defendant files a timely Fed. R. Civ. P. 50(a) or (b) motion.

*Id.* at 1487-88 (emphases added) (citations omitted).[4]

The facts of the instant case involved contested factual issues bearing on Defendant's entitlement to qualified immunity. In its order disposing of the parties' motions for summary judgment, the district court expressly reserved the qualified immunity question for later determination:

If it were to credit Stephens' account of these events, a reasonable jury clearly could find that Deputy Lin violated his constitutional rights by employing excessive force. Yet, Deputy Lin would still be entitled to qualified immunity if the law were not clearly established. *Saucier*, 533 U.S. at 201 (stating that if a constitutional right would have been violated under the plaintiff's version of the facts, the court must then determine whether the right was clearly established).

\*       \*       \*

---

[4]    It is not always necessary to follow this procedure, because

the failure to give requested jury interrogatories may not be error, or [the] error may be harmless, where the jury verdict itself, viewed in the light of the jury instructions, and any interrogatories that were answered by the jury, indicate without doubt what the answers to the refused interrogatories would have been, or make the answers to the refused interrogatories irrelevant to the qualified immunity defense.

*Johnson*, 280 F.3d at 1318. But "[i]n a proper case, the use of special jury interrogatories going to the qualified immunity defense is not discretionary with the court." *Id.*

> Even though this Court has concluded that Deputy Lin is not entitled
> to qualified immunity on Stephens' excessive force claim at the
> summary judgment stage, Deputy Lin is not precluded from pursuing
> the qualified immunity defense at the trial. *See Vaughan v. Cox*, 343
> F.3d 1323, 1333 (11th Cir. 2003). Should the jury choose not to
> credit (in whole or in part) Stephens' version of the facts, or should
> the facts not be presented at trial as alleged here on summary
> judgment, the qualified immunity analysis may change.

*Simmons v. Bradshaw*, No. 14-80425, 2014 WL 11456548, at *8-9 (S.D. Fla. Dec.

31, 2014).  Rather than submitting the contested factual issues—*i.e.*, the historical

facts—to the jury at trial, however, the Court opted to give the following

instruction:

> Whether a specific use of force is excessive or unreasonable depends
> on factors such as the nature of any offense involved, whether a
> citizen poses an immediate violent threat to others, including the
> police officer, and whether the citizen resists or flees. In assessing
> these factors, you should consider whether an officer's belief that a
> citizen is posing an immediate violent threat is an objectively
> reasonable belief under the circumstances, notwithstanding that it is a
> mistaken belief. Where an officer's mistaken belief that a citizen
> poses an immediate and deadly threat is objectively reasonable under
> the circumstances, then that officer's use of deadly force is not
> excessive or unreasonable. On the other hand, where an officer's
> mistaken belief that a citizen poses an immediate and deadly threat is
> not objectively reasonable under the circumstances, then that officer's
> use of deadly force is excessive or unreasonable.

This instruction is problematic not only because it is an incorrect statement of the

law, but moreover because it effectively delegated resolution of the issue of

qualified immunity to the jury—presumably as to both facts and law—and thus the

14

district court never decided whether Deputy Lin was entitled to his claimed

defense of qualified immunity. [5]

Consistent with Supreme Court precedent, we have noted that the factual

issues bearing on the excessive force inquiry are distinct from the legal issues

bearing on a defendant's entitlement to qualified immunity:

> It makes perfect sense to conclude, as the Supreme Court did in
> *Saucier*, that with such claims the merits issue and the qualified
> immunity issue are distinct, so that the existence of a valid Fourth
> Amendment excessive force claim is not inconsistent with qualified
> immunity. In other words, a defendant officer could use force in
> making an arrest that is later judged to be excessive enough that it
> violates the Fourth Amendment, but if prior decisions did not clearly
> establish that the use of that amount of force in those circumstances
> was constitutionally excessive, the defendant officer would be entitled
> to qualified immunity.

*Johnson*, 280 F.3d at 1321.  In this case, however, the excessive force inquiry was

not sufficiently divorced from the qualified immunity inquiry in that the instruction

improperly conflated the two inquiries and presented the jury with both together.

The jury was thus essentially forced to find either that Deputy Lin used excessive

---

[5]    Throughout trial proceedings, defense counsel repeatedly objected to the district court's
handling of the qualified immunity question, thereby preserving the issue for appeal.  *See* Defs.'
Cross Reply Br. at 3 (citing numerous instances on the record where "defense counsel stated and
re-stated the defense's objection to the proposal offered by the trial court in regard to how to
address the qualified immunity issue in this case").  We find that Deputy Lin "made [his]
position clear to the court previously and further objection would [have been] futile," and further
that consideration of this issue "is necessary to 'correct a fundamental error or prevent a
miscarriage of justice.'"  *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1329 (11th Cir.
1999) (quoting *Landsman Packing Co., Inc. v. Cont'l Can Co., Inc.*, 864 F.2d 721, 726 (11th Cir.
1989)).

force and therefore was not entitled to qualified immunity, or that Deputy Lin did

not use excessive force at all. [6]

This instruction was erroneous for two reasons. First, it is not the province

of the jury to decide a defendant's entitlement to qualified immunity. *See Cottrell*,

85 F.3d at 1488 ("We do not mean to imply, of course, that district courts should

submit the issue of whether a defendant is entitled to qualified immunity to the

jury. Qualified immunity is a legal issue to be decided by the court, and the jury

interrogatories should not even mention the term."); *Stone*, 968 F.2d at 1166 ("The

law is now clear . . . that the defense of qualified immunity should be decided by

the court, and should not be submitted for decision by the jury."). Second, there

was no room for the jury to find that Deputy Lin used excessive force and also the

district court to decide that he was entitled to qualified immunity. *See Johnson*,

280 F.3d at 1321 ("[T]he existence of a valid Fourth Amendment excessive force

claim is not inconsistent with qualified immunity."); *Saucier*, 533 U.S. at 197

("[T]he ruling on qualified immunity requires an analysis not susceptible of fusion

---

[6]     The district court denied Deputy Lin's request for a special interrogatory designed to
address the factual component of his qualified immunity defense, apparently out of concern that
creating too much space between the excessive force and qualified immunity inquiries could lead
to inconsistent verdicts. This concern was unfounded, however, because finding excessive force
does not preclude entitlement to qualified immunity. *See Anderson*, 483 U.S. at 643 (expressly
rejecting argument that "[i]t is not possible . . . to say that one 'reasonably' acted unreasonably");
*see also Long v. Slaton*, 508 F.3d 576, 583-84 (11th Cir. 2007) ("Even if [the defendant's] use
of deadly force was excessive under the Fourth Amendment, we conclude alternatively that [the]
[d]efendants are entitled to qualified immunity because they, especially given the circumstances,
violated no clearly established right.").

with the question whether unreasonable force was used . . . ."); *Mitchell*, 472 U.S. at 527-28 ("[I]t follows from the recognition that qualified immunity is in part an entitlement not to be forced to litigate the consequences of official conduct that a claim of immunity is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated.").

Evidently, the district court believed that the jury instruction at issue properly covered both excessive force and qualified immunity.  In its order denying in part the defendants' motion for a new trial, the district court stated that, "[i]n light of the jury instructions given in this case—which the jury is presumed to have understood and followed—the jury's verdict reflects an implicit finding that Deputy Lin did not commit an objectively reasonable mistake when he shot Dontrell Stephens."  *Simmons v. Bradshaw*, No. 14-80425, 2016 WL 4718409, at *1 (S.D. Fla. Apr. 18, 2016).  This "implicit finding" recognized by the district court, however, does not necessarily answer the qualified immunity question, which must be considered and resolved by the court as a legal issue.  *See Saucier*, 533 U.S. at 205 ("An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances.").

Because of these errors, Deputy Lin was not afforded the opportunity to have his claimed defense of qualified immunity determined by the court, as he was

entitled to have.  Furthermore, the errors were not harmless because this is not a case in which "the jury verdict itself, viewed in the light of the jury instructions, and any interrogatories that were answered by the jury, indicate without doubt what the answers to the refused interrogatories would have been, or make the answers to the refused interrogatories irrelevant to the qualified immunity defense." *Johnson*, 280 F.3d at 1318.  Because the jury instructions did not accurately reflect the law, and moreover because Deputy Lin was improperly deprived of the opportunity to have his defense of qualified immunity considered by the district court, it was an abuse of discretion for the district court to have denied Deputy Lin's motion for a new trial.  *See Gowski*, 682 F.3d at 1310.  Accordingly, we will reverse and order a new trial.  *See Broaddus*, 145 F.3d at 1288.[7]

## IV.

With respect to Stephens' *Monell* claim, the district court made thorough factual findings supporting its grant of summary judgment in favor of Sheriff Bradshaw and against Stephens.  These findings included the following:

---

[7]   Had the jury been afforded the opportunity to make specific factual findings relevant to the qualified immunity inquiry—including, for example, whether Stephens had committed a traffic infraction on his bicycle; whether Stephens dismounted from his bicycle and complied with Deputy Lin's commands following the stop; and whether Stephens possessed any weapons, threatened Deputy Lin, or attempted to flee—the district court could (and should) have then determined, as a matter of law, "whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions."  *Mitchell*, 472 U.S. at 528.

(1) "Stephens . . . has failed to demonstrate *prior* constitutional violations with respect to PBSO officer-involved shootings," *Simmons*, 2014 WL 11456548 at \*12;

(2) "Stephens has not shown ongoing constitutional violations or even meritorious complaints regarding officer-involved shootings that Sheriff Bradshaw simply ignored," and "the record shows that Deputy Lin never had a complaint, let alone a meritorious complaint, regarding the use of deadly force" *id.* at \*15;

(3) "Beyond alleging deficiencies in the investigation of his own shooting, Stephens has not produced any evidence showing that PBSO's investigative and disciplinary procedures were generally deficient," and "he has not identified any prior constitutional violation that went unpunished," *id.* at \*16;

(4) "[D]espite the failure of PBSO investigators to interview Stephens, the shooting was nonetheless reviewed by PBSO Internal Affairs and by its violent crimes personnel, and it was then separately investigated by the State Attorney's Office," *id.* at \*18; and

(5) "[N]either Sheriff[] Bradshaw's statement in defense of Deputy Lin nor the subsequent investigation of the shooting can support Stephens' ratification theory of liability, as neither occurred *before* the shooting and neither could have been the *cause* of the injury," *id.* at \*19.

In making these findings, the district court noted correctly that "[s]ettlement agreements . . . are not competent evidence that Sheriff Bradshaw condoned the actual use of excessive force," *id.* at \*12 n.12, and carefully analyzed memoranda from the State Attorney's Office "provid[ing] critical context for—and rebut[ting]—Stephens' suggestion that Sheriff Bradshaw's defenses of his deputies' actions were unjustified," *id.* at \*11.  The district court also noted that

"the Stephens shooting was the first time that Deputy Lin had ever fired his weapon in the line of duty," *id.* at *15, and further that "Deputy Lin testified that he understood that Sheriff Bradshaw holds him and other deputies accountable for their actions," *id.* at *10.

As the district court seems to have implicitly observed, the most difficult hurdle for Stephens to mount in order to succeed on his *Monell* claim against Sheriff Bradshaw is causation.  The only causation argument Stephens offers is that "Sheriff Bradshaw's routine and uncritical ratification of his deputies' prior use of force 'was causally connected' to Lin's shooting of Stephens, because it sent a message to Lin and his deputies that allegations of excessive force would not be investigated."  Appellant's Br. at 54.  Even accepting *arguendo* that Sheriff Bradshaw "routinely and uncritically" ratified his deputies' use of force, it is difficult to understand how anything Sheriff Bradshaw allegedly did (or failed to do) could have been the "moving force of the constitutional violation" in this case. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Without competent evidence establishing a pattern or practice of constitutional violations, Stephens' shooting must be evaluated as a single incident. Even assuming that Stephens' shooting was unconstitutional, this incident alone does not establish a custom of tolerating excessive force.  *See Salvato v. Miley*, 790 F.3d 1286, 1295 (11th Cir. 2015) ("[T]he failure to investigate a single incident, of

which the sheriff was unaware until after-the-fact, cannot ratify a constitutional violation."); *see also Thomas ex rel. Thomas v. Roberts*, 261 F.3d 1160, 1174 n.12 (11th Cir. 2001), *cert. granted, judgment vacated sub nom. Thomas v. Roberts*, 536 U.S. 953 (2002), *opinion reinstated*, 323 F.3d 950 (11th Cir. 2003) ("[W]hen plaintiffs are relying not on a pattern of unconstitutional conduct, but on a single incident, they must demonstrate that local government policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis before a court can hold the government liable on a ratification theory.").

On a broader scale, the Supreme Court has made clear that the bar to establish municipal liability is very high. *See, e.g.*, *Connick v. Thompson*, 563 U.S. 51, 70 (2011) ("[P]roving that a municipality itself actually caused a constitutional violation . . . presents 'difficult problems of proof,' and we must adhere to a 'stringent standard of fault,' lest municipal liability under § 1983 collapse into respondeat superior." (quoting *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 406 (1997))).  Whether or not this high bar is advisable as a general policy matter is one question, but whether or not the district court erred in its evaluation of all pertinent evidence under binding legal precedent is another.  We answer this latter question—the only one before this Court—in the negative and

thus affirm the district court's grant of summary judgment in favor of Sheriff

Bradshaw on Stephens' *Monell* claim against him in this case.

IV.

For the foregoing reasons, the judgment below is **AFFIRMED in part** and

**VACATED in part,** and the case is hereby **REMANDED** for a new trial.

WILSON, Circuit Judge, dissenting:

I would not disturb the jury's verdict on Dontrell Stephens' excessive force claim brought pursuant to 42 U.S.C. § 1983. The jury determined that Deputy Adams Lin used excessive force against Stephens in violation of the Fourth Amendment by shooting him four times at close range—rendering him a paraplegic—after stopping him for riding his bicycle on the wrong side of the road. Appealing the denial of their motion for a new trial, Deputy Lin and Sherriff Bradshaw argue that the district court abused its discretion by improperly instructing the jury in two ways: (1) by not allowing them to present a special interrogatory to the jury, asking whether Deputy Lin made a reasonable mistake; and (2) by refusing to give the jury a "20/20 hindsight" instruction, to let the jury know that it must judge the officer's reasonableness "at the time of the events, not from hindsight."

But rather than address these specific issues, the majority opinion sets aside the jury's verdict for a different reason—that the jury instructions given did not accurately reflect the law, and that Deputy Lin was deprived of the opportunity to have his qualified immunity defense considered by the district court. Although the panel questioned counsel at oral argument about whether qualified immunity was improperly presented to the jury, the issue was neither briefed, nor appealed.

I dissent because the jury instructions did properly state the law.  And I disagree with the majority's determination that the district court improperly relinquished consideration of Deputy Lin's entitlement to qualified immunity to the jury rather than retain it for consideration by the district court judge himself. Lastly, I disagree with the majority's resolution of the *Monell* claim.

## I.   THE JURY INSTRUCTIONS

As we previously stated in the prior appeal, a reasonable jury could find that Deputy Lin violated Stephens' clearly established constitutional rights by employing excessive force, and by finding that the allegedly violated right was clearly established by governing law.  *See Stephens v. Lin*, 612 F. App'x 581, 582 (11th Cir. 2015) (per curiam).  Here, the jury found that Lin's use of force was excessive or unreasonable, and, as a result, Stephens suffered injuries warranting damages totaling $23,148,100.00.  As an issue of fact, the jury was entitled to determine whether Lin used excessive force.  Accordingly, the trial judge submitted the following instruction to the jury:

> Whether a specific use of force is excessive or unreasonable depends on factors such as the nature of any offense involved, whether a citizen poses an immediate violent threat to others, including the police officer, and whether the citizen resists or flees. In assessing these factors, you should consider whether an officer's belief that a citizen is posing an immediate violent threat is an objectively reasonable belief under the circumstances, nothwithstanding that it is a mistaken belief.  Where an officer's mistaken belief that a citizen

> poses an immediate and deadly threat is objectively
> reasonable under the circumstances, then that officer's
> use of deadly force is not excessive or unreasonable. On
> the other hand, where an officer's mistaken belief that a
> citizen poses an immediate and deadly threat is not
> objectively reasonable under the circumstances, then that
> officer's use of deadly force is excessive or unreasonable.

The majority finds this instruction "problematic not only because it is an incorrect statement of the law, but moreover because it effectively delegated resolution of the issue of qualified immunity to the jury—presumably as to both facts and law—and thus the district court never decided whether Deputy Lin was entitled to his claimed defense of qualified immunity." Maj. Op. at 14–15. I disagree on both accounts. The instruction is not an incorrect statement of the law, nor can it reasonably be construed as an improper delegation of the qualified immunity determination to the jury. Whether Officer Lin made an objectively reasonable mistake in believing that Stephens posed a threat is for the jury to decide in making its excessive force determination.

This instruction is also consistent with Supreme Court precedent addressing facts to be considered in excessive force cases. *See Saucier v. Katz*, 533 U.S. 194, 205, 121 S. Ct. 2151, 2158 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818 (2009) ("If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed."); *see also*

*McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1246–47 (11th Cir. 2003)

(per curiam) (holding that deadly force is not excessive force where the officer has

an objectively reasonable fear that the suspect poses an imminent threat of bodily

harm).

Qualified immunity's clearly-established-law requirement, however, looks at

whether "the *officer's mistake as to what the law requires* is reasonable, [and when

it is reasonable] the officer is entitled to the immunity defense." *Saucier*, 533 U.S.

at 205, 121 S. Ct. at 2158 (emphasis added).  Here, the trial court did not ask the

jury whether the officer made a reasonable mistake as to the law.  The court merely

asked the jury to determine whether excessive force was used.

The trial court could not have separated the question of whether a mistake

was reasonable from the question of whether the force was excessive.  Doing so

would contravene Supreme Court precedent.  *Id.* (stating that determining the

reasonableness of a mistake is part of the excessive force question).  If Deputy

Lin's mistake about whether Stephens posed a threat was reasonable, the force he

used would not be considered as excessive.  And if Deputy Lin's mistake about

whether Stephens posed a threat was unreasonable, the force he used would be

considered excessive.  *See id.*  That is exactly what the given instructions said.

The court did not err in submitting the factual reasonableness determination

to the jury because it *had* to submit it to the jury for it to determine whether there

26

was excessive force.  It is up to the jury to determine whether an officer's conduct was reasonable in light of the factual circumstances.  Here, the jury determined that the force used by Deputy Lin was unreasonable.  It is then up to the trial judge to decide whether qualified immunity is applicable by asking whether the officer's conduct was reasonable in light of clearly established law.  *See Lee v. Ferraro*, 284 F.3d 1188, 1193, 1198–99 (11th Cir. 2002).  As the majority states, the trial judge "uses the jury's factual findings to render its ultimate legal determination as to whether it would be evident for a reasonable officer, in light of clearly established law, that his conduct was unlawful in the situation he confronted."  Maj. Op. at 11.

Here, the trial judge did just that.  The judge relied on the jury's factual determination—that Deputy Lin's conduct was unreasonable and excessive—to find that Deputy Lin violated Stephens' Fourth Amendment right to be free from excessive force.  The court, not the jury, determined that Stephens' right to be free from excessive force was clearly established under existing law.  In any event, the district court had already considered, and rejected, Lin's qualified immunity claim—twice—when the defendants raised it in their motion for judgment as a matter of law and again in the renewed judgment as a matter of law.

Therefore, I have no quarrel with the formalities of the district court's resolution of Deputy Lin's entitlement to qualified immunity.  And taking the deferential nature of the abuse of discretion standard into account, I see no

reversible error. *See Gowski v. Peake*, 682 F.3d 1299, 1310 (11th Cir. 2012) (per curiam).

Nonetheless, the issues briefed were whether the district court abused its discretion by: (1) not allowing the defendants to present special interrogatories asking whether Deputy Lin made a reasonable mistake; and (2) not allowing the defendants to present the "20/20 hindsight" instruction in an effort to let the jury know that it must judge the officer's reasonableness at the time of the events, and not from hindsight.

First, the district court did not err when it declined to provide the jury with a mistaken belief interrogatory, which would have asked:

> Do you find by a preponderance of the evidence that Deputy Adams Lin made an objectively reasonable mistake when he perceived that Dontrell Stephens threatened Deputy Adams Lin with a firearm and posed an imminent threat of death or serious physical harm at the time that Deputy Adams Lin shot Dontrell Stephens?

This proposed interrogatory was covered by the given instructions. And there can be no error when "the trial court[] refus[es] to give a requested instruction . . . where the substance of that proposed instruction was covered by another instruction which was given." *Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1525 (11th Cir. 1985). Here, the court instructed the jury that Deputy Lin's use of deadly force could not be excessive if Deputy Lin's mistaken belief that Stephens posed an immediate and deadly threat was objectively

reasonable under the circumstances.  Thus, for the jury to reach the conclusion that Deputy Lin's use of force was excessive, it necessarily had to determine that his mistake was objectively unreasonable.  And because the jury found that Deputy Lin's use of force was excessive, it answered what would have been covered in the defendants' proposed instruction in the negative.  The substance of the proposed interrogatory, then, was covered by the jury instructions delivered.  And we do not have discretion to assume otherwise because we always assume the jury follows the instructions consistently with their verdict.  *See United States v. $242,484.00*, 389 F.3d 1149, 1155 (11th Cir. 2004) (en banc) ("We *always* infer that the jury resolved *every* relevant factual issue in favor of its verdict." (emphasis added)).

Second, the district court also did not err when it declined to provide the following "20/20 hindsight" instruction to the jury:

> The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. This determination must include allowances for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain and rapidly evolving. The Fourth Amendment reasonableness standard analysis is an objective one. The question is whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting the officer, without regard to his underlying subjective intent or motivation. Therefore, under the Fourth Amendment, an excessive force case does not involve inquiry into subjective concepts like malice and sadism.

In declining to give the instruction, the district court found that (1) the instruction was argumentative; (2) the instruction was not included within the Eleventh Circuit's Civil Pattern Jury Instructions; (3) the argument was permitted to be made to the jury during closing arguments; and (4) even if excluding it was error, the error was harmless.  I agree with the Majority opinion's conclusion that there was no abuse of discretion here given the specific and thorough determinations made by the district court.  *See* Maj. Op. at 6.

## II.   THE MONELL CLAIM

We review de novo the trial court's order granting summary judgment.  *S. Waste Sys., LLC v. City of Delray Beach*, 420 F.3d 1288, 1290 (11th Cir. 2005).  In analyzing a summary judgment motion, we resolve all reasonable doubts about the facts in favor of the non-movant, Stephens, and draw all justifiable inferences in his  favor.  *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013).  "To survive a motion for summary judgment, [Stephens] need only present evidence from which a jury might return a verdict in his favor.  If he [has done] so, there is a genuine issue of fact that requires a trial."  *Samples ex rel. Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988) (internal quotation marks omitted).

Ordinarily, a governmental entity cannot be held liable for the unconstitutional actions of its employees under 42 U.S.C. § 1983.  However, a governmental entity can be held liable if a plaintiff can show that the unconstitutional act at issue is a result of a policy or custom promulgated by the

entity.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S. Ct. 2018,

2035–36 (1978).  This showing requires a plaintiff to demonstrate: "(1) that his

constitutional rights were violated; (2) that the municipality had a custom or policy

that constituted deliberate indifference to that constitutional right; and (3) that the

policy or custom caused the violation."  *McDowell v. Brown*, 392 F.3d 1283, 1289

(11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct.

1197, 1204 (1989)).  And because a governmental entity will rarely formally adopt

a custom or policy permitting or encouraging constitutional violations, *see Grech

v. Clayton Cty.*, 335 F.3d 1326, 1329–30 (11th Cir. 2003) (en banc), *Monell* claims

may be based upon inferences and circumstantial evidence of a custom or policy.

For example, "a persistent failure to take disciplinary action against officers can

give rise to the inference that a municipality has ratified conduct, thereby

establishing an unconstitutional custom that can subject the government to

liability."  *Salvato v. Miley*, 790 F.3d 1286, 1296 (11th Cir. 2015) (internal

quotation marks omitted and alterations adopted).

Here, because the district court found that Stephens established a triable

issue of a constitutional violation, only the custom and causation prongs of a

*Monell* claim are relevant.  If Stephens has offered sufficient evidence to establish

those prongs, he is entitled to proceed to trial on his *Monell* claim.  I would reverse

the district court's dismissal of the *Monell* claim because Stephens offered sufficient evidence of a custom of tolerating excessive force, and of a causal link between that custom and this shooting to survive a motion for summary judgment.

Stephens presented substantial evidence of a custom within the Sherriff's Office. Specifically, the evidence of a custom of tolerating excessive force consists of (1) a number of police shootings that resulted in financial settlements but no officer discipline,[1] (2) statements by Sheriff Bradshaw in the media before investigations of the officer shootings had been completed, and (3) a number of concerning issues in the investigation of Stephens' shooting. The practices of the Sheriff's Office before the Stephens shooting suggest the existence of a custom. *See id*. When that suggestion is considered with the evidence from this shooting, including Sheriff Bradshaw's comments to the press and the lack of a thorough investigation, there is a triable issue.

First, Stephens presented adequate evidence of a lack of discipline within the Sherriff's Office. Between September 2009 and September 2013, the Sheriff's Office entered into 16 separate settlements of lawsuits alleging improper use of force. While settlements are not admissions of guilt, they are also not proof of innocence; thus reaching a settlement agreement does not mean that the Sheriff's

---

[1] Sheriff Bradshaw did not put any evidence into the record regarding any prior discipline. The district court cited to another case to supply evidence that an officer had been disciplined for his use of force. However, we cannot take judicial notice of a fact found true in another action, without more. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994).

Office's use of force was appropriate.  Under the summary judgment standard, these settlements can, at the least, serve as evidence that the Sheriff's Office used force on at least 16 occasions.  *See Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1315 (11th Cir. 2001) ("[T]he issue of municipal liability allows for a broad inquiry into other [claims of wrongdoing] . . . .").  Also, two veteran officers with over 25 years of service stated that no Sheriff's Office police shooting has ever been deemed unjustified.  Finally, Sheriff Bradshaw promoted Lin to Sergeant in 2015, two years *after* shooting Stephens.  Despite a number of shootings involving Sheriff's Office deputies, no officer has *ever* been punished, no shooting has *ever* been deemed unjustified, and one deputy who shot a civilian was *promoted*—all evidence tending to show a lack of discipline in the Sherriff's Office.

Second, Stephens presented adequate evidence of the Sherriff's Office's biased investigations.  Stephens submitted evidence of post-shooting press releases and statements by Sheriff Bradshaw, most of which state that an investigation is in its "preliminary stages" or is "ongoing."  Sheriff Bradshaw's declarations that the officers acted legally despite the existence of an "ongoing investigation" indicate that the outcome of the investigations were pre-determined.

For example, in a 2008 press release on a shooting by a deputy, the Sheriff's Office stated that "[t]he deputy discharged his firearm multiple times in self-defense" yet in the next paragraph stated, "This case is under investigation."

33

In another circumstance, only a day after a Sheriff's Office deputy fatally shot a 16-year-old boy, the Sheriff's Office issued a press release stating that "[t]he deputy was justifiably in fear of his life."  And in a 2012 press release, the Sheriff's Office stated that it was investigating a deputy-involved shooting, but that same day Sheriff Bradshaw told *The Palm Beach Post* that "[t]he suspect was going to shoot our deputy, we had to shoot first."

These statements of confidence are not necessarily false.  However, when we take this evidence in the light most favorable to Stephens, it shows a prejudgment that likely influenced the outcome of investigations.

Third, Stephens also presented evidence from his own shooting, which cements his *Monell* claim.  *See Salvato*, 790 F.3d at 1297 (holding that post-event "evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right[s]" and can "lend weight to a finding that there was a policy behind the actions which led to the constitutional violation." (internal quotation marks omitted)).  When the pre-shooting evidence is combined with the evidence from Deputy Lin's shooting of Stephens and viewed in the light favorable to Stephens, there is a triable issue of fact about whether the custom tolerating excessive force existed.

Sheriff Bradshaw and every other Sheriff's Office employee involved in this shooting unequivocally endorsed Deputy Lin's actions and adopted his version of

events—notwithstanding the availability of contradictory video evidence.  Sheriff

Bradshaw publicly declared, on the morning of the shooting, that Deputy Lin "did

the right thing."  Specifically, Sheriff Bradshaw stated:

> The guy bailed off the bike, ran between two parked cars.
> The deputy bailed out of his car, yelling to him the whole
> time, "Stop, put up your hands, stop." The deputy goes
> around the other side of the car to cut him off and
> apprehends him. That's when the guy came out with the
> dark object and started to turn towards the deputy . . . .
> There's nothing in the rules of engagement that says we
> have to put our lives in jeopardy to wait to find out what
> this is and get killed.

The video contradicts this statement.  First, Stephens did not run between two

parked cars—he walked off his bike towards Deputy Lin in a slow, non-threatening

manner after following Deputy Lin's command for Stephens to come towards him.

Second, Stephens did not pull out a dark object at that point—from the time he got

off the bike until he was shot, Stephens had his phone in his right hand.  And third,

Stephens did not turn toward Lin—he turned away.  This is all apparent from the

video, which was available for immediate review.  Moreover, in a statement later

that day, the Sheriff's Office said it was investigating the shooting, while also

declaring:

> The subject was riding a bicycle, threw the bike down
> and attempted to run away. The deputy gave verbal
> commands to "STOP," "Let me see your hands." The
> subject pulled a dark object from his waist band and was
> shot three times by the deputy. The subject was

transported to St. Mary's Medical Center and is listed in
critical condition.

But, again, this is contradicted by video evidence.

Detective Smith, the officer in charge of investigating the shooting, watched
the dash camera video of the shooting before taking Deputy Lin's sworn statement.
Yet when Deputy Lin made statements that contradicted the video, Smith did not
question Deputy Lin's assertions.  When confronted during his deposition about
why he did not challenge Deputy Lin about the inconsistencies between Deputy
Lin's statement and the video, Smith stated that he did not see the cellphone in
Stephens' right hand during the dash camera video because they were "going so
fast," and he "just didn't notice it."  In fact, Smith testified that he did not realize
that Stephens was holding the cellphone in his right hand, or that Deputy Lin's
sworn statement was inconsistent with the video evidence, until the day of his civil
deposition—nearly a full year later.

And one of the most troubling aspects of this whole investigation is that no
one ever interviewed Stephens about his version of events.  Neither investigator
reviewing the shooting even tried to contact or interview Stephens.  They also
never contacted *any* witness to the shooting, or *any* witness to attest to whether
Stephens actually impeded traffic—a charge Stephens denies and a charge that
formed the only other basis for pulling Stephens over besides the dubious claim
that Stephens was "unfamiliar."  The Sheriff's Office offered no explanation for

these investigatory shortcomings, as is noted in the district court's summary judgment order.

Yet despite all of this evidence, the district court found that a custom did not exist because Stephens did not definitively put forward evidence of a prior unconstitutional shooting.  However, the unconstitutionality of Stephens' shooting alone could arguably be enough to find a custom of tolerating excessive force.  *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 832, 105 S. Ct. 2427, 2440 (1985) (Brennan, J., concurring) ("A § 1983 cause of action is as available for the first victim of a policy or custom . . . as it is for the second and subsequent victims; by exposing a municipal defendant to liability on the occurrence of the first incident, it is hoped that future incidents will not occur."); *Vineyard v. Cty. of Murray*, 990 F.2d 1207, 1212 (11th Cir. 1993) (per curiam) ("We have noted that a single constitutional violation may result in municipal liability when there is sufficient independent proof that the moving force of the violation was a municipal policy or custom."  (internal quotation marks omitted)).

Looking at the totality of the evidence and drawing inferences in Stephens' favor, a jury could find that the Sheriff's Office had a custom of tolerating the use of excessive force.

Stephens also presented adequate evidence to establish a causal link.  The causal link here was shown by the depositions of Deputy Lin himself and Chief

Tucker, a use of force expert for the plaintiff's side.[2] *See Vineyard*, 990 F.3d at
1213 (upholding the causation element of a *Monell* claim based on expert
testimony).

Chief Tucker provided sworn expert testimony that Sheriff Bradshaw's
"routine and uncritical ratification of his deputies' use of force was causally
connected" to Deputy Lin's use of deadly force against Stephens.  His expert
affidavit was based not only upon the standard operating procedures at Sheriff's
Office, which sent a message to all deputies that excessive force would not be
properly investigated, but also upon Deputy Lin's admissions of what he knew
about those procedures.

Chief Tucker opined that Deputy Lin's admitted knowledge of how past
officer involved shootings were handled, plus Deputy Lin's own experience with
use of force alerts and incidents, likely convinced Deputy Lin that nothing would
happen to him if he overreacted in using deadly force.  Chief Tucker's expert
report states that Sheriff Bradshaw's routine ratification of his deputies' actions
sent a message to his deputies, and to the Internal Affairs investigators, that
excessive force would be tolerated.

---

[2] Chief Tucker was the Chief of Police for 23 years in various cities including Tallahassee,
Florida.  In addition, he served as the Vice-Chairman of the Florida Criminal Justice Standards
and Training Commission for three years, which was responsible for establishing minimum
standards for the employment and training of all Florida law enforcement officers, including the
training of officers on use of force.

Considering the custom evidence and the causal link testimony under the summary judgment standard, Stephens presented enough evidence to create a triable issue of fact.

I respectfully dissent.