```
 1                     UNITED STATES DISTRICT COURT
                       SOUTHERN DISTRICT OF FLORIDA
 2
                          CASE NO. 14-CV-80425-BSS
 3
      DONTRELL STEPHENS,
 4                                          West Palm Beach, Florida
                    Plaintiff(s),
 5                                          October 12, 2018
               vs.
 6
      SHERIFF OF PALM BEACH COUNTY,
 7    FLORIDA, Ric Bradshaw, et al.,
 8
                    Defendant(s).      Pages 1 - 23
 9    ----------------------------------------------------------
10                             HEARING
              TRANSCRIBED FROM DIGITAL AUDIO RECORDING
11             BEFORE THE HONORABLE BARRY S. SELTZER
                  UNITED STATES MAGISTRATE JUDGE
12
      APPEARANCES:
13
      FOR THE PLAINTIFF(S):   JOHN SCAROLA, ESQ.
14                            SEARCY DENNEY SCAROLA BARNHART & SHIPLEY
                              2139 Palm Beach Lakes Boulevard
15                            West Palm Beach, FL 33402
                              (561) 686-6300
16                            scarolateam@searcylaw.com
                              (by telephone)
17
      FOR THE DEFENDANT(S):   RICHARD A. GIUFFREDA, ESQ.
18                            PURDY JOLLY GIUFFREDA
                              BARRANCO & JISA, P.A.
19                            2455 E Sunrise Boulevard
                              Fort Lauderdale, FL 33304
20                            (954) 462-3200
                              richard@purdylaw.com
21
      TRANSCRIBED BY:         Joanne Mancari RPR, CRR, CSR
22                            Court Reporter
                              jemancari@gmail.com
23
24
25
```

1    Thereupon,

2    the following proceedings were held:

3              THE COURT:  All right.  Let me take a moment to

4    welcome you here.  Today being October 12, 2018.

5              Let me call our case.

6              Stephens v. Lin and Bradshaw, and I guess it is

7    Stephens v. Bradshaw and Lin.  Let me ask counsel to state

8    their appearances.

9              MR. SCAROLA:  Good morning, your Honor.  This is Jack

10   Scarola on behalf of the plaintiffs, and I thank you for

11   accommodating me by telephone.  I'm sorry about not being able

12   to accommodate the request for an earlier start.

13             THE COURT:  Not a problem.  Not a problem.

14             MR. GIUFFREDA:  Good morning, your Honor.  Richard

15   Guiffreda on behalf of the defendant.

16             THE COURT:  Welcome.

17             All right.  What I thought we would do today is try to

18   just kind of take stock of where we are, where we need to go,

19   and try to think about some dates to set.  I also want to

20   obviously get the input of counsel.

21             But before I do that, let me just touch on -- give you

22   an overview of some of the things that I thought we should

23   touch on today.  Again, I want to elicit input from counsel as

24   well.

25             I wanted to talk to you about what you all thought

1    about the prospects, whether it would be fruitful of the

2    parties going to mediation.  I want to talk about setting a

3    pretrial conference, sort of a workshop where we sit around the

4    table and talk about, I think we need to talk about jury

5    instructions because obviously that was an issue for the

6    Eleventh Circuit.  I read the decision when it came out.  I am

7    going to need to go back and reread it.  And obviously I would

8    like to have the attorneys get together and kind of brainstorm

9    on what they think would pass muster with the Eleventh Circuit.

10   I think we need to sit down and try to get those hammered out

11   before the trial.  As well as revisit the -- because I guess

12   it's been now probably coming up on two years, I think.  Right?

13   January would be about two years since the trial?

14          MR. GIUFFREDA:  Yes, your Honor.

15          MR. SCAROLA:  Yes.

16          THE COURT:  So revisit I think our questionnaire for

17   the jury veneer and the number of jurors and any other matters

18   that we might need to touch on in a pretrial conference.  Then

19   of course talk about trial dates.

20          So let me, before we get into those three things, let

21   me ask counsel if there are any matters that they want to touch

22   on today as well in addition to those.

23          Mr. Scarola.

24          MR. SCAROLA:  Your Honor, I think that there is a

25   significant issue with respect to whether the damages in this

1    case need to be retried in light of the fact that the alleged

2    error relates strictly to a question of liability, and there is

3    substantial precedent that upon remand for a new trial, the

4    trial court retains the discretion to determine what it is that

5    needs to be retried.

6              MR. GIUFFREDA:  May I address that issue, your Honor?

7              THE COURT:  Yes.

8              MR. GIUFFREDA:  We have thought about that quite a

9    bit, your Honor, and we have, I think, a concise position.

10             It is our position that the liability verdict and,

11   thus, the damages stands.  The real issue with this is --

12             THE COURT:  Say that again.  It's your position that?

13             MR. GIUFFREDA:  The liability verdict that a

14   constitutional violation occurred and, thus, the damages, that

15   does not need to be retried.  The issue --

16             THE COURT:  I guess I'm not -- it's your position that

17   liability does not need to be retried?

18             MR. GIUFFREDA:  On the first question where the jury

19   answered yes, that a constitutional violation actually

20   occurred.

21             THE COURT:  Yes.

22             MR. GIUFFREDA:  That was not appealed.  That was not

23   reversed.  That stands.

24             It was the second component of the verdict form that

25   we requested and was not given that in our view is what is

1    going to be retried.  That question being whether or not there

2    was a reasonable mistake in perception of fact.

3             It's clear from the opinion and the law that it is not

4    inconsistent.  You can have cases where on the one hand an

5    actual violation of the constitution occurred resulting in a

6    given set of damages and yet the officer can still be entitled

7    to qualified immunity if the jury determines that a reasonable

8    mistake in fact or facts.

9             THE COURT:  This goes to really the verdict form for

10   the jury and instructions.  The trial would essentially be the

11   same.

12            MR. GIUFFREDA:  Except for damages.  We don't see any

13   need to retry damages.

14            THE COURT:  You do not?

15            MR. GIUFFREDA:  No, we don't.

16            THE COURT:  You agree, you concur with Mr. Scarola?

17            MR. GIUFFREDA:  I do, and I think the reality would

18   be, the instructions would be a basic set of instructions

19   further instructing the jury that they are here to resolve

20   factual disputes which turn on a defense raised by defendant

21   Lin, and then depending on the resolution of those factual

22   issues the court would then determine the validity of that

23   defense.  So we don't need instructions about Bran v. Culner

24   and 20/20.

25            THE COURT:  Let's do this, because I don't want to put

1     the cart before the horse.  Because this is what I wanted to

2     get into at our pretrial conference and actually sit down with

3     proposed instructions in front of me.

4              MR. GIUFFREDA:  And we may need some of that to set

5     that stage, but the jury would understand that they're not here

6     to decide whether or not the constitution is violated.

7              THE COURT:  Right.

8              MR. GIUFFREDA:  It is just to resolve certain

9     questions of fact that go to the issue of mistake and

10    perception.

11             THE COURT:  So damages are off the table.  All right.

12    So we are just going to get to -- one minute.

13             Mr. Scarola, do you agree with that?

14             MR. SCAROLA:  I do, your Honor, yes.

15             THE COURT:  All right.

16             MR. SCAROLA:  I think Mr. Guiffreda's statement is

17    accurate.  The problem that I have is that having reread this

18    opinion many times, I don't know what it is that the Appellate

19    Court wants the jury to determine that was not inherent in the

20    response, in the verdict that they already returned.

21             THE COURT:  Right.  I don't mean to cut you off, but I

22    think that is what we are going to need to really try to focus

23    in on at our pretrial conference with the instructions.

24             I am going to need to -- I read the opinion when it

25    came out.  I am going to need to go back and reread it.  I

```
 1   thought that we would do it at our pretrial conference.  I want
 2   to try to set a date for it, sit around the table informally.
 3   We will have a court reporter of course, but try to come up
 4   with instructions that would satisfy the Eleventh Circuit
 5   panel.
 6          But before -- again, I don't want to put the cart
 7   before the horse.  Mr. Guiffreda, other than mediation,
 8   pretrial conference, trial dates, any other matters that we
 9   should be talking about today?
10          MR. GIUFFREDA:  No, your Honor.  I anticipated the
11   four categories that you have laid out so I am prepared to
12   address all four.
13          THE COURT:  All right.  Let's talk about mediation
14   first.  I don't want the parties to unnecessarily incur time
15   and effort at a mediation if they don't think there is any
16   prospect that it is going to be fruitful or productive.  On the
17   other hand, if at this stage of the litigation there is a
18   reasonable prospect that the parties could come to an
19   agreement, perhaps it is something we should explore.
20          Mr. Scarola, what is your take?
21          MR. SCAROLA:  Your Honor, this is now a sovereign
22   immunity claims bill case.  Damages are tapped in the absence
23   of the claims bill at $200,000.
24          Your Honor is well aware of the condition of Dontrell
25   Stephens.  He is presently living in a homeless shelter.  You
```

1    may not be aware of the fact that he has been hospitalized

2    repeatedly as a consequence of recurring problems with

3    decubitus ulcers, bed sores, that are life-threatening.  His

4    medical bills are millions of dollars at this point in time.

5         So absent an agreement from the defense that they will

6    join in the presentation of a claims bill for a multimillion

7    dollar sum, there is no way this case could be settled.  It

8    just is not possible.  That needs to be an essential element of

9    any discussions that we would have about this case, and I don't

10   think I am violating any confidentiality concerns when I tell

11   you that that just has not been a subject that the defense has

12   been open to discussing up to this point in time.

13        THE COURT:  Mr. Guiffreda, what is your client's

14   position?

15        MR. GIUFFREDA:  Well, in terms of what is being

16   retried with sergeant Lin, he has no insurance coverage.  Now

17   that the judgment has been vacated under Chapter 111, the

18   sheriff's office could resolve the case for sergeant Lin, but

19   whether they would I have no authority.

20        But having heard Mr. Scarola's comments, it seems as

21   though the conditions going into mediation would either be the

22   sheriff's office supporting a claims bill of multimillion

23   dollars as to the state law battery judgment that remains

24   against the sheriff's office, which of course is a completely

25   separate issue from the judgment against sergeant Lin because

1    the claims bill process does not apply to sergeant Lin.

2                THE COURT:  The judgment against the sheriff remains?

3                MR. GIUFFREDA:  Yes.  That was not reversed or

4    disturbed, which is why we think logically you couldn't have

5    two different judgments in damages.  The sheriff is vicariously

6    liable for what Lin did in the scope of his employment in

7    committing a battery under state law, which is the same

8    standard that would apply under federal law.  So the

9    determination that excessive force was used stands.

10                The issue, the only issue left is whether he made a

11   mistake when he thought the phone was a gun.  If the jury says

12   yes, judgment is entered in his favor on qualified immunity,

13   the judgment against the sheriff's office stands.  It is a

14   claims bill issue.  But there is no claims bill issue as to

15   Lin.  That will never play a part with Lin.  It is a matter of

16   collectibility and/or whether the sheriff would choose to

17   settle the case for Lin, and I don't know that they would.

18                But they can't pay a judgment against Lin under

19   Chapter 111.  They can settle a case prejudgment under Chapter

20   111 because the sheriff's office has no insurance at all.  So

21   every penny is a taxpayer penny.

22                So that's my understanding of how Chapter 111 works.

23   I have not broached that subject with the sheriff's office.  I

24   thought perhaps the better thing might be if Mr. Scarola and I

25   had a conversation about these things, we could then decide

1    whether mediation is worth the effort and I could approach the

2    sheriff's office.

3         Obviously representing sergeant Lin we have an

4    interest in trying to resolve the case for him to the extent

5    that can occur.  But I also know if there's some condition that

6    it has to be, our starting point, for example, would have to be

7    $10 million, then that would be a waste of time.  That's not

8    going to happen in my view.

9         THE COURT:  Why don't we do this.  As much as I am the

10   trial judge, and I don't want to put you in a position where

11   you kind of show your cards too much in front of me, why don't

12   I just ask Mr. Scarola, Mr. Guiffreda, why don't the two of you

13   discuss this, if you will, between yourselves.  If you are able

14   to either come to an agreement or come to an agreement as to

15   mediation, obviously what we know, and we can take things off

16   the calendar, but why don't we go ahead today and try to set

17   the remaining dates.

18        MR. GIUFFREDA:  Sounds like a plan, Judge.

19        MR. SCAROLA:  If I might respond just briefly to the

20   statement Mr. Guiffreda made.

21        THE COURT:  Sure.

22        MR. SCAROLA:  As is noted in the Eleventh Circuit's

23   opinion, and it is footnote 2 on page 5 -- and your Honor may

24   recall this -- the parties stipulated and the district court

25   ordered that if the jury found that deputy Lin had committed a

```
 1    battery, Eric Bradshaw would be held vicariously liable.

 2             So I'm a little bit confused by Mr. Guiffreda's

 3    statement that the verdict on the common law battery count as

 4    to deputy sheriff Lin stands or that that is somehow not

 5    applicable to the sheriff.  The sheriff is vicariously liable

 6    for the battery that deputy sheriff Lin committed by virtue of

 7    stipulation incorporated into an order and recognized in the

 8    Eleventh Circuit's opinion.

 9             THE COURT:  I don't have the Appellate opinion in

10    front of me.  I read it when it came out.  It's been a number

11    of months.

12             My understanding was that they vacated the judgment as

13    to both the sheriff and as to Lin because I thought the sheriff

14    was derivatively liable and by vacating as to Lin I thought

15    they vacated as to the sheriff.

16             I have to go back.  It's been a number of months and

17    I'll confess I would have to take a closer look at it.

18             MR. GIUFFREDA:  May I respond, your Honor?

19             THE COURT:  Yes.

20             MR. GIUFFREDA:  Perhaps Mr. Scarola misunderstood or

21    misheard me.  But actually my statement was that the judgment

22    against the sheriff stands.  The judgment against the sheriff

23    on the question of whether excessive, unreasonable force was

24    used was not appealed.  That was not reversed.

25             The concept is you can have a situation where
```

1    excessive, unreasonable force is used and under federal law the

2    individual capacity of the defendant, in this case sergeant

3    Lin, can still get qualified immunity if that use of excessive,

4    unreasonable force was caused by reasonable mistakes in the

5    perception of facts.  But that defense doesn't apply under

6    state law.

7            Under state law if the force was unreasonable and

8    excessive, it's a violation of state law.

9            THE COURT:  So it would still be a $200,000 verdict.

10           MR. GIUFFREDA:  And we are tendering that payment.  I

11   don't know where we are in the process of doing that, but my

12   understanding is that check, now that the mandate has come

13   back, the check is either being cut or has been cut and is

14   being sent, and so to that end Mr. Scarola is correct.  That

15   component of the state law claim against the sheriff's office

16   is a matter of a claims bill under state law because in fact

17   under 768.28, the sheriff cannot, even if he wanted to, settle

18   a case for more than the cap where there is no insurance to pay

19   the amount above the cap.  The only way the sheriff can pay

20   more than the cap is if a claims bill is passed.

21           THE COURT:  Right.

22           MR. GIUFFREDA:  And that's because they have no

23   insurance.

24           THE COURT:  Mr. Scarola.

25           MR. SCAROLA:  My point in that regard, your Honor, is

1    that I have in the past and the sheriff has in the past

2    stipulated that they would not oppose a claims bill up to a

3    particular amount, and in some cases have joined in the effort

4    to advance a claims bill.  So the only thing that would need to

5    be negotiated would be whether there can be some agreement with

6    regard to the claims bill process because there is no way this

7    case can be settled for $200,000.  It just cannot happen.

8            THE COURT:  Mr. Guiffreda.

9            MR. GIUFFREDA:  Well, your Honor, that would have to

10   be something I would need to discuss with the client.  I have

11   no authority and I have no reason to think the sheriff's office

12   would agree to support a claims bill.  But the 200,000 is going

13   to be paid.  It is going to be paid.

14           THE COURT:  Right.

15           MR. GIUFFREDA:  And then the process of pursuing a

16   claims bill would be, I assume, up to Mr. Scarola or whomever

17   he chooses to involve in that process.

18           THE COURT:  Mr. Scarola has said in the past he has

19   had cases where the sheriff has agreed not to oppose, as

20   opposed to affirmatively support.

21           MR. GIUFFREDA:  Thinking out loud, I would imagine if

22   there were a way to resolve this case on behalf of deputy Lin,

23   remembering that there are no state law claims against deputy

24   Lin -- it's only a 1983 claim which has no cap on damages, and

25   768.28 does not apply to that claim.  So there is no claims

1    bill issue with that claim.  It is just a matter of whether

2    there is coverage or not.  I would imagine an attempt to

3    resolve it that way, we would want to include the sheriff's

4    office as well.  They are not going to pay to get Lin out and

5    still have the potential for a claims bill on the table.

6          It sounds to me -- I certainly will call Mr. Scarola,

7    but it sounds to me like the numbers that it would require to

8    accomplish resolution via either vehicle, whether it is

9    supporting a claims bill that would also include dismissal of

10   Lin or paying on behalf of Lin which would --

11         THE COURT:  I would suspect that paying on behalf of

12   Lin would come out of the sheriff's budget, right?

13         MR. GIUFFREDA:  It would.

14         THE COURT:  As opposed to a claims bill which would

15   not.

16         MR. GIUFFREDA:  No, it would.  A claims bill, the

17   legislature would order the sheriff's office to pay.

18         THE COURT:  But it comes out of the legislature's

19   budget.

20         MR. GIUFFREDA:  It does not.

21         MR. SCAROLA:  That is the sheriff's budget, your

22   Honor.

23         MR. GIUFFREDA:  Yes, it would.

24         THE COURT:  All right.

25         MR. GIUFFREDA:  And that is what makes them --

```
 1              MR. SCAROLA:  Your Honor may remember from the Monell
 2    evidence that was presented that the sheriff has in fact
 3    settled multiple --
 4              THE COURT:  Right.
 5              MR. SCAROLA:  -- excessive force claims for amounts
 6    substantially in excess of the cap.
 7              THE COURT:  Right.
 8              MR. SCAROLA:  So that has been done repeatedly.
 9              THE COURT:  No, I recall reading those newspaper
10    articles attached to the summary judgment motion that they have
11    done that.  I thought that came out of the pot of money in
12    Tallahassee as opposed to the pot of money in West Palm.  But I
13    didn't know how that worked.
14              MR. GIUFFREDA:  No, and that's what can impact claims
15    bills ultimately.  Where a government entity has insurance
16    above the cap, they can settle if they want to.  They don't
17    have to.  But you might have better luck getting a claims bill
18    passed up to that coverage because an insurance company is
19    paying it.
20              THE COURT:  Right.
21              MR. GIUFFREDA:  In this case the legislature would
22    understand that the taxpayers of Palm Beach County would have
23    to pay that.
24              Now, I'm aware the sheriff's office has settled other
25    shooting cases above the cap.  What happened in those cases,
```

```
1    there were 1983 claims that they could settle and the cap
2    doesn't apply.  But in this case the only claim against the
3    sheriff's office that survived is a state law claim which is
4    capped.  And I don't know if I'm making this more complicated
5    than it is, but I think ultimately when we try to be practical
6    as lawyers, the practical reality is if Mr. Scarola is
7    representing now that there is some sort of a floor of, say, $5
8    million, it's got to be 5 million, regardless of which vehicle
9    you choose to use, agreeing to a claims bill and/or getting Lin
10   and the sheriff out which would not involve the claims bill
11   process, I don't think that would ever happen.  I am just being
12   candid.
13          THE COURT:  All right.  Why don't you go ahead and
14   speak with Mr. Scarola and if you can come to an agreement, let
15   me know or if you can at least come to an agreement as to
16   mediation, and perhaps there is a mediator that has handled
17   similar situations that might be able to facilitate your
18   finding a common ground.  Either way, let me know if you are
19   able to resolve it or not.
20          Let's talk about a date for a pretrial conference
21   because I wanted to set aside, why don't we talk about setting
22   aside the better part of a day to really get into the weeds on
23   the jury instructions and a verdict form and any other matters
24   we need to address pretrial.
25          Have you all taken a look at your calendars and
```

1    considered some dates for a pretrial conference?  Do you have

2    your calendars with you?

3              MR. GIUFFREDA:  I do, your Honor.  I actually have

4    seven weeks that we have checked with our expert, and my

5    schedule --

6              THE COURT:  This would be for a pretrial conference.

7              MR. GIUFFREDA:  I do have my calendar in front of me

8    and I was focusing on picking a week for trial.

9              THE COURT:  OK.  Let's talk about a pretrial

10   conference because I would like to, like I say, set aside, and

11   we may not need the better part of a day, but I would at least

12   like to set aside sufficient time and not be rushed to go

13   through to try to iron out all the matters we need to address,

14   which include the questionnaire for the veneer.  I guess maybe

15   you could bring the one that we had last time and we can take a

16   look at that again, and any other matters we will need to

17   address before trial.

18             Mr. Scarola, do you have your calendar handy?

19             MR. SCAROLA:  I do, your Honor, but I am going to make

20   a radical proposal.

21             THE COURT:  OK.

22             MR. SCAROLA:  I am pleased that Mr. Guiffreda sees the

23   procedural posture of this case in the way in which he sees it.

24   I, quite frankly, expected pushback, which we haven't gotten,

25   and I am thankful about that.  We view this in the same way.

1           In light of those concessions that have been made by

2    Mr. Guiffreda, I need to consider what as a practical matter

3    would be accomplished by trying the limited issue that

4    Mr. Guiffreda has agreed would need to be tried.  That is, if

5    there is an agreement, as I understand there is, that we have a

6    viable judgment against the sheriff's office for common law

7    battery and that the amount of damages attributable to that

8    common law battery is the 22 million some odd dollars that have

9    been determined by the jury with the appropriate setoffs, then

10   I'm not sure what we would accomplish from a practical

11   standpoint through a subsequent trial, and it may be that all

12   we are doing is delaying our ability to move forward with the

13   claims bill process, which obviously I want to move forward

14   with as quickly as possible for the sake of our client.

15   Establishing from an intellectual standpoint what would be

16   established in the subsequent trial in terms of the liability

17   of deputy sheriff Lin, who is uncollectible in any event,

18   doesn't advance Dontrell Stephens' cause.

19           So I am going to suggest to your Honor that you give

20   us a week --

21           THE COURT:  All right.

22           MR. SCAROLA:  -- to see if we can perhaps come to some

23   agreement with regard to whether a retrial is necessary before

24   we start carving out pieces of your Honor's calendar.

25           THE COURT:  All right.  That suggestion is well-taken.

1          Let me suggest this.  Speak with Mr. Guiffreda.

2     Obviously give some thoughts, speak to your client.  If you can

3     get back to me, let me know what direction you would like to go

4     in and just file a succinct joint status report on CM/ECF.

5          If in fact you would like to proceed with the trial,

6     why don't you give me two alternative dates for a pretrial

7     conference and why don't we plan to spend the better part of a

8     day, although it may not be necessary to even go more than a

9     few hours, but I would like to at least have that comfort, and

10    then give me three alternative weeks for a trial that works for

11    both of you, and I will sync it with my calendar because

12    obviously I have criminal duty weeks and I have other civil

13    trials and hearings and other matters.

14         So I will sync the dates that you give me with my

15    calendar and we will go ahead and proceed from there.

16         But today is the 12th.  So why don't we say, then, by

17    next Friday, by the 19th, if you could file a joint status

18    report letting me know what direction you all would like to go

19    on this, that would be great.

20         MR. SCAROLA:  Thank you, sir.  I do appreciate that.

21         THE COURT:  OK.  Let me just ask one other matter.

22    There was the issue of the appraisal that was done on the

23    vehicle when the collection effort was made against the deputy,

24    which I think remains outstanding, and you said that there was

25    going to be a lien.

```
 1                Mr. Scarola, can you update me where that stands?
 2                The statute required that I appoint an appraiser, who
 3    is required under the statute, and the appraiser did his job.
 4    I understand that you did not concur with his opinion, but he
 5    did his job and my understanding is he's the only one who has
 6    not been paid.
 7                MR. SCAROLA:  No, sir, that's not a correct
 8    understanding.
 9                THE COURT:  All right.
10                MR. SCAROLA:  He is not the only one who has not been
11    paid.
12                THE COURT:  All right.  Then I stand corrected.  I
13    take that back then.  My apologies.
14                Can you update me on that?  I received a few weeks ago
15    a copy of his invoice and I had called and I guess it had still
16    not been paid.  I just wanted to try to get an update on that.
17                MR. SCAROLA:  There is nothing that has happened in
18    that regard that I am aware of, sir.
19                THE COURT:  All right.  I understand from what you had
20    filed that at such a time as Mr. Stephens is paid that the
21    appraiser will be paid.
22                MR. SCAROLA:  If Dontrell Stephens recovers in this
23    case and there are sufficient funds to pay liens, then
24    certainly if the court orders that Mr. Stephens is responsible
25    for the payment of that appraisal fee, it will be put --
```

```
1              THE COURT:  I did.  I did.  It's required under the
2    statute.
3              MR. SCAROLA:  Yes, your Honor.  Mr. Stephens will
4    satisfy all obligations that he is capable of satisfying.
5              THE COURT:  All right.  Any other matters that we need
6    to address today?
7              MR. GIUFFREDA:  No, your Honor.
8              MR. SCAROLA:  I don't think so.
9              THE COURT:  OK.  Very well.  I will look forward to
10   getting the joint status report next week and just let me know
11   what direction we are going in.
12             If in fact we are going to be retrying it, again, just
13   give me three alternative dates for a pretrial conference and
14   let's at least set aside the better part of a day, although it
15   may turn out not to be necessary.  And at that pretrial
16   conference I would like to obviously get into the actual
17   instructions and I would like counsel to try to get together on
18   the instructions beforehand and if there are differences, then
19   we can iron those out.  A verdict interrogatory form.  We will
20   need to talk about the questionnaire for the veneer.  I think
21   we have one from last time.  We may want to take a look at that
22   again and see if we need to tweak that at all, and any other
23   matters that you may want to raise.  And then if you can also
24   give me three alternative weeks for the trial.
25             Very well.  OK.  Gentlemen, thank you for your --
```

```
 1              MR. GIUFFREDA:  Your Honor, briefly, while Mr. Scarola

 2      is on the phone.  Mr. Scarola, can you hear me?

 3              MR. SCAROLA:  I can, yes.

 4              MR. GIUFFREDA:  Are you available Monday morning for a

 5      phone call?  Because after I leave here I'm actually heading

 6      over to Fort Myers.  So can I call you Monday morning?

 7              MR. SCAROLA:  Hold on one second.  I'm sorry.

 8              (Pause)

 9              MR. SCAROLA:  I am available Monday morning before 11

10      a.m., and that means as early as you want to start.

11              MR. GIUFFREDA:  I'll call you around 9.  How does that

12      sound?

13              MR. SCAROLA:  That's very good.  I'll talk to you

14      then.

15              MR. GIUFFREDA:  Thank you.

16              MR. SCAROLA:  All right.

17              THE COURT:  Gentlemen, thank you very much.

18              MR. SCAROLA:  Your Honor, I am requesting a copy of

19      the transcript of these proceedings, please.

20              THE COURT:  OK.  Erin, if you can let -- we have audio

21      recorded it.  So, Erin, if you could let the court reporter

22      section know.

23              THE DEPUTY CLERK:  No, he has to call, Judge.  I will

24      give him the number.  I will call his office and give him the

25      number and the person that they need to call.
```

1          THE COURT:  Very well.  Thank you.

2          (Adjourned)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E


     I hereby certify that the foregoing is an accurate

transcription to the best of my ability of the digital audio

recording in the above-entitled matter.


October 17, 2018          s/ Joanne Mancari
                         Joanne Mancari, RPR, CRR, CSR
                         Court Reporter
                         jemancari@gmail.com